UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMMER L. N-B,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

Case No. 2:24-cv-12591
Honorable Anthony P. Patti

**<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 10), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), and AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY</u>**

**I.    Background**

Summer L. N-B ("SLNB") applied for disability insurance (DI) benefits in July 2022, alleging disability beginning May 18, 2021 (*i.e.*, the alleged onset date (AOD)), at which point she was 45 years old, *i.e.*, a "younger person," 20 C.F.R. § 404.1563(c). (ECF No. 8-1, PageID.170-171.) Plaintiff's claims were denied initially in October 2022 and upon reconsideration in February 2023. (*Id*., PageID.96-124, 131-134.)

SLNB sought a hearing with an administrative law judge (ALJ) (*id*., PageID.135-136), and, on July 10, 2023, ALJ Laura Chess conducted a hearing, at which the claimant, her counsel, and a vocational expert (VE) appeared (*id*.,

PageID.56-95). On September 28, 2023, ALJ Chess issued an unfavorable decision. (*Id*., PageID.37-55.)

SLNB requested review (*id*., PageID.165-167); however, on August 8, 2024, the Appeals Council (AC) denied the request for review (*id*., PageID.24-29).

## II.  Instant Case & Pending Motion

October 1, 2024, Plaintiff brought this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner"). The parties have consented to my jurisdiction to handle this case through entry of a final judgment. (ECF No. 7.)

Currently before the Court is Plaintiff's motion for summary judgment (ECF No. 10), which challenges whether the ALJ properly evaluated the opinion evidence and Plaintiff's subjective testimony. (*Id*., PageID.711-712, 727-735.) The Commissioner filed a cross-motion for summary judgment (ECF No. 12), and Plaintiff has filed a reply (ECF No. 13).

On December 5, 2025, the Court conducted a remote hearing, at which Attorney Eddy Pierre Pierre and Assistant United States Attorney Lisa G. Smoller appeared. The Court took the matter under advisement.

## III.  Standard

Plaintiff has the burden of proof on her statements of error, as she challenges the ALJ's treatment of the opinion evidence and Plaintiff's subjective testimony,

2

each of which occurs between steps 3 and 4 of the sequential process. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). "[A] decision supported by substantial evidence must stand, even if [the court] might decide the question differently based on the same evidence." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017). The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**IV.    Discussion**

Before proceeding to Plaintiff's specific statements of error, the Court notes the ALJ's related RFC determination:

> . . . [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and/or carry 10 pounds. The claimant can stand/walk 4 hours and sit at least 6 hours in an 8-hour workday, with normal breaks.

3

> The claimant can occasionally push/pull with both upper extremities. The claimant can frequently (but not constantly) push/pull with both lower extremities [*i.e., exertional limitations*]. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance per the Selected Characteristics of Occupations (SCO). The claimant can occasionally stoop, kneel, crouch, and crawl [*i.e., postural limitations*]. There can be frequent (but not constant) handling and fingering with both upper extremities [*i.e., manipulative limitations*]. There can be no concentrated exposure to extreme cold, extreme heat, wetness, humidity, or vibration per the SCO. There can be no exposure to moving mechanical parts or work at high exposed places [*i.e., environmental limitations*]. The claimant can understand, remember, and carry out simple instructions [*i.e., sustained concentration and persistence limitations*].

(ECF No. 8-1, PageID.45-50.) To be clear, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Thus, the RFC's lifting and/or carrying limitations are consistent with the SSA's most restrictive physical exertion requirement.

### A.  Opinion evidence (20 C.F.R. § 404.1520c)

Plaintiff argues that the ALJ failed to properly evaluate the opinion evidence (ECF No. 10, PageID.727-732), namely challenging the ALJ's finding that the January 30, 2023 physical RFC assessment of Rachael Wheelock, PA-C (ECF No. 8-1, PageID.681-684) was not persuasive. (*See id.*, PageID.48-49.)[1] Plaintiff

---

[1] It appears PA Wheelock treated Plaintiff from at least April 2022 to January 2023. (*See* ECF No. 8-1, PageID.509-512 [April 2022], 505-506 [June 3, 2022],

4

specifically takes issue with the ALJ's conclusion that Wheelock's opinion was "not consistent with the remaining record." (ECF No. 10, PageID.728 (citing ECF No. 8-1, PageID.48).)

Preliminarily, the ALJ's written decision accurately reflects Wheelock's opinion that Plaintiff "could lift/carry not even less than 10 pounds, stand/walk less than 2 hours, sit less than 2 hours, would have significant limitations in her ability to use her upper extremities, would be off-task 25%, and was incapable of even low stress jobs ([ECF No. 8-1, PageID.681-684])." (*Id*., PageID.48.) The ALJ then provided three reasons for her assessment that Dr. Wheelock's opinion was "not persuasive."

### 1. Function report

As for Wheelock's opinion that Plaintiff could "never" lift and carry "less than 10 lbs." in a competitive work situation (*see* ECF No. 8-1, PageID.683 ¶ J), the ALJ noted that "in the function report [Plaintiff] indicated she does some cleaning, laundry, dishes, and making bed (all with breaks), which requires lifting and carrying some weight ([ECF No. 8-1, PageID.298-308])." (ECF No. 8-1,

---

598-599 [October 2022], 590, 593 [December 2022], 653, 655, 657, 659, 660, 700 [January 2023].)

PageID.48.) In other words, the ALJ found that Wheelock's opinion was not consistent with Plaintiff's function report.

During the video hearing, Plaintiff's counsel stated that the ALJ characterized Plaintiff as being more capable than her function report actually suggests. For example, in her July 2022 function report, Plaintiff describes the help she gets from her husband and daughter with respect to daily activities (*see* PageID.299); yet, Plaintiff expressly wrote that she is able to do "some cleaning, laundry, dishes, making beds . . . [,]" (ECF No. 8-1, PageID.303). And, the ALJ cited multiple records to support her conclusion that Plaintiff was "able to maintain sedentary work activity with the additional limitations detailed above." (*See* ECF No. 8-1, PageID.46).[2]

### 2.  Clinical findings

The ALJ also noted that "clinical findings were not consistent with this degree of limitation[,]" and followed that statement with multiple citations to instances of normal assessments of muscle strength, gait, coordination, tone, motor

---

[2] Indeed, the state agency medical consultants' *lifting and/or carrying* limitations – *i.e.*, occasionally 20 pounds and frequently 10 pounds (ECF No. 8-1, PageID.103, 114) – are consistent with "light work," although the state agency medical consultants also noted Plaintiff was only capable of sedentary work when taking into consideration the seven strength factors (*id.*, PageID.106, 118). Thus, the ALJ's assessment that Plaintiff is capable of "sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and/or carry 10 pounds[,]" (*id.*, PageID.45), is *more restrictive* than the state agency consultants' lifting and/or carrying assessments. (*See also* ECF No. 8-1, PageID.47-48.)

6

strength, grip strength, range of motion, and/or station from July 2021 to June 2023 (*i.e.*, between the AOD of May 18, 2021 and the September 28, 2023 decision date). (ECF No. 8-1, PageID.48-49.) Plaintiff begins her related challenge by pointing to: (a) Wheelock's representation that Plaintiff has been diagnosed with seropositive rheumatoid arthritis, that her symptoms include fatigue, severe brain fog, loss of function, debilitating muscle and joint pains, and swelling, and that clinical findings and objective signs include "swelling of hands" (*see* ECF No. 8-1, PageID.681 ¶¶ 2, 4, 6); and, (b) the ALJ's acknowledgement that, in January 2023, "some swelling in the wrists and right elbow [was] observed ([*id.*, PageID.702])[,]" (ECF No. 8-1, PageID.49). (ECF No. 8-1, PageID.728-729; *see also* ECF No. 13, PageID.761.)

    Plaintiff then contends the ALJ's consideration of the objective findings was selective, and she points multiple records – *e.g.*, the July 12, 2021 notes from Joshua P. June, D.O. (ECF No. 8-1, PageID.536-539), the November 19, 2021 notes from Allison G. Trevino, P.A. (ECF No. 8-1, PageID.431-439, 524-529), the February 7, 2022 notes from Amy Triah, D.O. (ECF No. 8-1, PageID.418-424), the October 7, 2022 consultative examination (CE) report of Martha Pollock, M.D. (ECF No. 8-1, PageID.555-562), the January 30, 2023 notes from Wheelock / June (ECF No. 8-1, PageID.653-656), and the June 9, 2023 notes from Dr. June (ECF No. 8-1, PageID.687-691) – as evidence that "the record is highly consistent with

7

PA Wheelock's opined limitations, especially in regards to her upper extremities." (*See* ECF No. 10, PageID.729-731; *see also* ECF No. 13, PageID.761.)  For example:  (a) the November 19, 2021 notes from the Beals Institute Osteoporosis Clinic – which were repeatedly referenced by the ALJ (*see* ECF No. 8-1, PageID.44, 46, 47, 49) – contain objective findings of mild tenderness to palpation and swelling in the bilateral hands (ECF No. 8-1, PageID.434); and, (b) Dr. June's June 9, 2023 notes indicate "wrists were swollen bilaterally with tenderness to palpation" and "notable swelling mild erythema and increased warmth of the MCP and PIP 1-5 bilaterally with pain to palpation" (*id*., PageID.689).  (*See* ECF No. 10, PageID.730-731.)

Nonetheless, the Court disagrees that the ALJ's "over reliance on benign examination findings did not build a logical bridge from the evidence to her conclusion."  (ECF No. 10, PageID.731; *see also* ECF No. 13, PageID.762.)  Instead, and as Plaintiff's use of the word "selective" suggests (*see* ECF No. 10, PageID.729), Plaintiff is really asking the Court to reweigh the evidence.  True, the ALJ may not cherry-pick isolated examination findings to reject a treating physician's opinion.  *See Minor v. Comm'r of Soc. Sec.*, 513 F.App'x 417, 435 (6th Cir. 2013).  Yet, the argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence."  *White v.*

8

*Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). It is not the Court's role to reweigh this evidence. *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.") (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)). In fact, when the Court asked during the video hearing about the veracity of the following statement – Plaintiff's "cited findings only show that *at times* there was some tenderness and swelling in Plaintiff's upper extremities and *slightly* reduced grip strength (ECF No. 8-1, PageID.420, 434, 538, 560, 655)[,]" (ECF No. 12, PageID.748 (emphases added)) – Plaintiff conceded it was true and/or a proper characterization. Moreover, at the hearing, the Court went over the following recitation of the ALJ's findings contained in Defendant's brief with Plaintiff's counsel and verified its accuracy:

> In July 2021, Plaintiff had full strength, her shoulders had full range of motion with no crepitus, and her hands had normal grip strength and range of motion with no crepitus (ECF No. 8-1, PageID.538). In January 2022, Plaintiff had no edema in her upper extremities, her muscle strength was full, and her shoulder and hand findings were essentially unchanged (ECF No. 8-1, PageID.434). The following month, Plaintiff's shoulders, elbows, and wrists had good range of motion and functioning without crepitus, she was doing well on medication, and her joint pain and morning stiffness was improving (ECF No. 8-1, PageID.420). Further, at Plaintiff's physical consultative examination in October 2022, Dr. Pollock observed that she had no peripheral edema, there was no evidence of active joint swelling or effusion, she had full use of her hands, her strength was full, and her shoulder, elbow, wrist, and hand range of motion was normal (ECF No. 8-1, PageID.556, 558-559).

9

(ECF No. 12, PageID.749.)  Indeed, Dr. Pollock's range of motion form appears to reflect full range of motion in her wrists and hands (*id.*, PageID.558-559), and, as to dexterity, Dr. Pollock indicated that Plaintiff's grip strength was 4/5 bilaterally (*id.*, PageID.560).  "'[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]'" the ALJ's decision will be upheld where, as here, it is supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The Court is not persuaded that cherry-picking occurred in this case.  The ALJ's description of the evidence was accurate and comprehensive. "[T]he ALJ need not expressly mention every piece of evidence so long as the overall decision was supported by substantial evidence." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 250 (6th Cir. 2015).  Here, it was.

  Lastly, Plaintiff makes a harmful error argument related to manipulative limitations. (*See* ECF No. 10, PageID.731-732.)  She contends Wheelock's assessment that Plaintiff had significant limitations, *i.e.*, bilaterally limited to handling, fingering, and reaching 10% of an 8-hour working day (*see* ECF No. 8-1, PageID.684), is consistent with Dr. Pollock's opinion – which the ALJ found "somewhat persuasive" (*id.*, PageID.48) – that Plaintiff "was unable to perform any orthopedic maneuvers[,]" (*id.*, PageID.556), and that a reduction of bilateral handling and fingering to occasional would have been work preclusive (*id.*,

10

PageID.90). (ECF No. 10, PageID.731-732.) However, the ALJ's finding that Dr. Pollock's opinion was only "somewhat persuasive" was not challenged on appeal. And, as the Commissioner points out, the ALJ was not required to adopt the VE's testimony (*see* ECF No. 12, PageID.751), particularly with respect to the fifth hypothetical the VE was asked to consider (*i.e.*, reduction to "occasional" handling and fingering) (*see* ECF No. 8-1, PageID.90), which was not consistent with the frequent handling and fingering limitations ultimately adopted in the RFC (*see id.*, PageID.45).[3]

### 3. Internally inconsistent

Finally, the ALJ noted that Wheelock's opinion was "internally inconsistent[,]" because it states Plaintiff "can engage in frequent climbing of stairs" but "reduces . . . standing/walking capacity to less than 2 hours without further explanation." (ECF No. 8-1, PageID.49.) This accurately characterizes Wheelock's opinion. (*Compare id.*, PageID.683; *with*, *id.*, PageID.684.)

Although Plaintiff's counsel disagreed during the video hearing that Wheelock's opinion was "internally inconsistent," the Court finds that the ALJ made a fair inference.

---

[3] The ALJ also concluded that the March 15, 2022 opinion of Alexander Weick, M.D. that Plaintiff could "return to normal activities tomorrow" (*id.*, PageID.371, 373) was "not persuasive" (*see id.*, PageID.48); however, Plaintiff's statement of error does not challenge the ALJ's treatment of this opinion either.

## B.     Symptoms (20 C.F.R. § 404.1529 & SSR 16-3p)

Plaintiff argues that the ALJ improperly evaluated her symptoms (*see* ECF No. 10, PageID.732-735), specifically challenging the ALJ's statement that Plaintiff's "allegations are inconsistent with the objective medical evidence and the claimant's activities of daily living." (ECF No. 8-1, PageID.47.) The ALJ explained this finding as follows:

> The claimant was noted to have normal or full strength, normal strength and tone of both lower extremities, normal gait, and coordination (e.g. [ECF No. 8-1, PageID.434, 446, 466; *id*., PageID.525, 538; *id*., PageID.556]). Additionally, the claimant exhibited normal grip strength, normal tone, normal range of motion, and no crepitus of both hands noted on examination at treatment visits in July 2021, August 2021, September 2021, November 2021, and January 2022 (e.g. [ECF No. 8-1, PageID.434, 446; *id*., 525, 531, 538]). In addition, the claimant's mental status examination results have been largely unremarkable (e.g. [ECF No. 8-1, PageID.506, 511, 517, 522, 525; *id*., PageID.689, 694, 701]). Finally, while the claimant's impairments have reduced their participation in recreational and social activities, the claimant still completes activities of daily living. The claimant retains the mental and physical capacity to take care of her children, shop for groceries, drive a car, perform some chores, handle her own finances, and prepare meals regularly ([ECF No. 8-1, PageID.298-308; *id*., PageID.326-334]; Testimony).

(*Id*., PageID.47 (emphasis added).)

Plaintiff contends "these mundane activities do not provide any explanation how they are inconsistent with her reported symptoms [or SLNB's] testimony." (ECF No. 10, PageID.733; ECF No. 13, PageID.762.) In support of her argument, she points to the complaints and symptoms she and her husband reported to the

consultative examiner George Pestrue, Ph.D. at her August 31, 2022 *mental status examination* (*see* ECF No. 8-1, PageID.549), which Plaintiff contends are "in direct contrast" to the ALJ's finding that Plaintiff "retains the mental and *physical capacity* to take care of her children, shop for groceries, drive a car, perform some chores, handle her own finances, and prepare meals regularly . . . [,]" (*see id*., PageID.47 (emphasis added)).  (*Id*., PageID.734.)

Nonetheless, the Court disagrees that "the ALJ relied on a misrepresented and selective reading of the record to support her conclusion."  (ECF No. 10, PageID.734.)  Preliminarily, the ALJ's written decision at Step 3, cites, *inter alia*, Plaintiff's July 2022 and January 2023 function reports (*see* ECF No. 8-1, PageID.298-308, 326-334) to support the conclusion that Plaintiff experienced "mild limitation" in adapting or managing herself.  (*Id*., PageID.44.)  Then, within the RFC determination, the ALJ:  (1) references Plaintiff's testimony about her activities of daily living (*see, e.g.,* PageID.77, 80-81); (2) states that Plaintiff "still completes activities of daily living[,]" which the ALJ supports with citations to Plaintiff's function reports and administrative hearing testimony; and, (3) Dr. June's 9, 2023 and May 5, 2023 office records (*see id*., PageID.687-691, 692-694) as evidence of Plaintiff's reports of "stiffness and some difficulties with her daily activities, with only mild swelling and tenderness to palpation."  (*Id*., PageID.46, 47, 49.)

13

Preliminarily, when the Social Security Administration (SSA) evaluates the intensity and persistence of a claimant's symptoms, such as pain, and determines the extent to which a claimant's symptoms limit his or her capacity for work[,]" the SSA considers relevant factors, including, *inter alia*, daily activities.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  *See, e.g., Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("Buxton's own accounts of her activities and limitations were also conflicting.  For instance, she shops for herself, does light cleaning, cooks for herself, drives herself places (including numerous doctors' visits), and exercises daily (thirty minutes of walking without post-exertional collapse), but cannot work.").  (ECF No. 12, 754-755.)[4]

Additionally, as the Commissioner points out, "reading the ALJ's decision as a whole shows that Plaintiff's daily activities contradict her subjective allegations."  (ECF No. 12, PageID.755.)  *See Bradford v. Sec'y of Dep't of Health & Hum. Servs.*, 803 F.2d 871, 873 (6th Cir. 1986) ("It is clear from a reading of the *entire* opinion that the ALJ relied upon the testimony of Dr. Schweikert to the effect that plaintiff could perform medium work activity.") (emphasis added); *see also Rice v. Barnhart*, 384 F.3d 363, 370, n. 5 (7th Cir. 2004) ("[I]t is proper to read

---

[4] Also, at the administrative hearing, the ALJ asked Plaintiff about medication side effects (ECF No. 8-1, PageID.72-73), and the ALJ clearly considered Plaintiff's testimony about medication side effects in the written decision (*see id.*, PageID.46).  *See* 20 C.F.R. § 404.1529(c)(3)(iv).

14

the ALJ's decision as a whole," and "it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision). In Plaintiff's case, the ALJ made multiple accurate references to Plaintiff's function reports and testimony (*see* ECF No. 8-1, PageID.45-47), but subsequently, as to Wheelock's opinion that Plaintiff could not lift or carry less than 10 pounds, compared the PA's opinion to Plaintiff's representation within her function report, noting that "she does some cleaning, laundry, dishes, and making bed (all with breaks), which requires lifting and carrying some weight ([ECF No. 8-1, PageID.298-308])[,]" (*id.*, PageID.48). (ECF No. 12, PageID.755-756.) This was fair.

Finally, the Commissioner contends "there are significant differences" between "Plaintiff's report of her functioning" at her August 31, 2022 consultative examination with George Pestrue, Ph.D. (*see* ECF No. 8-1, PageID.549-553), which the ALJ found "not persuasive" (*id.*, PageID.48), and her October 7, 2022 physical CE with Dr. Pollock (*see id.*, PageID.555-562), which the ALJ found "somewhat persuasive" (*id.*, PageID.48). (ECF No. 12, PageID.756-757.) For example, at the mental status examination, Plaintiff reported that she hurts in all of her joints, she has no strength in her hands, and she can lift a gallon of milk, but when she pours the milk she starts shaking and has to use two hands to do it (ECF No. 8-1, PageID.549), but at the physical CE could "do light housework and other

15

activities of daily living but occasionally has difficulty with tasks such as opening jars, opening doors and holding pts and pants[,]" and "button and pick up coins but must do so slowly[,]" (ECF No. 8-1, PageID.555).  (ECF No. 12, PageID.756-757.)  Even if Plaintiff does not think these reports are inconsistent, the Court agrees that Plaintiff's report to Dr. Pollock "substantiates the ALJ's decision." (ECF No. 12, PageID.757.)[5]  *See* SSR 16-3p ("We evaluate the intensity and persistence of an individual's symptoms so we can determine *how symptoms limit ability* to perform work-related activities for an adult . . . ) (emphasis added).

## V. Order

For the reasons detailed above, Plaintiff has not shown legal error that would upend the ALJ's decision, and the Court finds that it is supported by substantial evidence.  The Court is satisfied that the ALJ acted well inside the "'zone of choice' within which the Commissioner can act without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted).  Accordingly, Plaintiff's motion for summary judgment (ECF No. 10) is **DENIED**, Defendant's motion for summary judgment (ECF No. 12) is

---

[5] The ALJ also found – without challenge on appeal– that the October 2022 and February 2023 mental RFC assessments of state agency psychological consultants Natalie Rea-Michalak, Psy.D. (ECF No. 8-1, PageID.104-105) and Joe DeLoach, Ph.D. (*id*., PageID.116-117) were partially persuasive.  (*Id*., PageID.48.)

16

**GRANTED**, and the decision of the Commissioner of Social Security is **AFFIRMED**.

    **IT IS SO ORDERED.**

Dated: December 16, 2025

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE